## Monongahela Navigation Company *versus* Blair.
## Same *versus* Magogany.

1. By the Act incorporating the Monongahela Navigation Company and its supplements, the damages done to private property by its works are to be assessed by viewers, who, if the parties cannot agree, are to be appointed by the Court of *Common Pleas.* The report of the viewers is to be filed in the office of the prothonotary of the proper county, and when confirmed *by the Court,* judgment may be entered, either party having the right to appeal *to the Court.* Also, before entering on lands the Company are required to give security, to be approved by *the Court of Common Pleas,* to pay the damages adjudged:—*Held,* that the *District Court* of Allegheny county had not jurisdiction to try the case on appeal.

2. An appeal from a report of viewers appointed by the Common Pleas under the provisions of the supplement to the Act of 31st March, 1836, for the incorporation of the Monongahela Navigation Company, cannot be withdrawn by the Company, without the consent of the adverse party.

3. The Act of 25th April, 1844, extending the claims of individuals to damage done to their lands *by overflow* caused by the works of the Monongahela Navigation Company, *is constitutional.*

4. The proper mode of assessment of the amount of such damage is by viewers appointed by the Common Pleas under the supplementary Act of the 9th February, 1848, and not by viewers appointed by a justice of the peace, as prescribed in the Act of incorporation; and such is the case, though no claim is made for *consequential* damage, as allowed by the Act of 1848.

5. The remedy afforded by the said Act of 1844, is not limited to cases of *permanent* overflow.

ERROR to the District Court of *Allegheny county.*

In each of these cases, five viewers had been appointed by the Court of Common Pleas of Allegheny county, to view the premises and assess the damage done to the lands severally of David Magogany and James Blair, lying on and near to the Monongahela river, in Allegheny county, by the dams, waterworks, and improvement of said company, near to dam No. 2, by overflowing said lands and property; and also the consequential damages resulting to each of the said owners of property on the south side of the said improvement, near to dam No. 2, from the acts and deeds and structures of said company.

The viewers awarded damage in each case; for Magogany, $334 damages, and to Blair, $1225 damages, with costs in each case.

The report in each case was entered, in May, 1850, in the prothonotary's office of the Court of *Common Pleas.* An appeal was taken on the part of the company, in each case, which was entered in the Common Pleas, to March Term, 1850; but afterwards, viz., at January Term, 1851, each of the cases was transferred by the prothonotary to the docket of *the District Court* of the same county, without any order or certificate to that effect.

An agreement was filed in the District Court in each case, in

[Monongahela Navigation Company *v.* Blair.].

which it was stated, that the allegations of the plaintiff were traversed, but that the cause was to be put at issue and tried, all matters of form being waived, but the parties reserving all matters of substance, whether legal or constitutional.

In the case of Magogany it was alleged that a portion of the bottom land of the farm, about 15 acres, had been rendered useless for cultivation; another portion of about the same quantity injured by being overflowed in time of freshets in consequence of the erection of the dams; and that another portion was destroyed by the wearing away or abrasion of the bank of the river in consequence of the high water caused by the dams.

The case of Magogany was called for trial on 21st May, 1852, whereupon, on the part of the company, objection was made to the jurisdiction of the Court, and the Court was asked to dismiss the case, which was refused.

The plaintiff endeavored to prove that his land had been inundated more frequently and to a greater extent than previous to the construction of the dams. It was admitted that the company had not proceeded to construct its improvement beyond Brownsville, as authorized by the Act of 1848. Some evidence was given in regard to the abrasion of the banks, occasioned by the swell created by the passage of the boats.

The Act of 9th February, 1848 (*Acts*, p. 39), conferred further powers and privileges upon the company; the third section provides for the case of any damage, *direct or consequential,* which may be or has been occasioned to private property by said dams, &c.; "and provided further, that said company shall be liable for all consequential damages resulting to the owner or owners of real property situated upon either side of the said improvement"

After the evidence was closed, the counsel for the company submitted points as follows:—

1st. That there is nothing in the Act of 1844 to authorize a recovery against the defendants on the footing of occasional inundations of the plaintiff's land, arising from high floods in the Monongahela river; and that if there were, the plaintiff has expressly limited his claim, in the petition filed by him, to the title which he may have derived under the Act of 1848, and is thereby precluded from the assertion of any right in the present case, under the former of these Acts.

2d. That the operation of the proviso in the third section of the Act of 1848 is dependent upon the enacting clause of the said section; and that, inasmuch as the defendants have never proceeded to extend their improvement, under the authority of the said Act, the liability stipulated therein as one of the conditions upon which the said extension might be made, has not yet attached.

3d. That supposing the said liability to have attached upon the

[Monongahela Navigation Company v. Blair.]

acceptance of the Act, the same can by no fair or reasonable construction be held to extend beyond the damages, which might be occasioned in the extension, and the exercise of the privilege conferred of raising the upper dam to the additional height authorized by the said Act.

4th. That the liability to consequential damages, imposed by the Act of 1848, is only to be referred to such injuries as would be remediable at the common law, if the defendants had been suable in that way; and therefore if the river is not thrown back upon the plaintiff's land by the defendants' erection, they are liable for nothing beyond, and certainly not liable for any results of an act of Providence.

5th. That, moreover, for the like reason, they are not responsible for any abrasion of the banks of the river, which may have been occasioned by the swell created by the passage of boats or other craft engaged in the navigation.

WILLIAMS, J., *inter alia*, charged as follows:—

"By the Act of 31st March, 1836, incorporating 'a company to make a lock navigation on the Monongahela river,' the defendant was authorized to erect dams of the height of four feet six inches; and by section eight of the same Act, the company is required to 'make amends for any damage that may be done on said lands, and pay the owner or owners for materials taken away, as well *as for the land occupied in the construction of said dams and waterworks*,' and the mode in which said damages are to be valued in case the parties cannot agree, is provided for in said section.

"It is not pretended by the counsel, that the plaintiff, under the provisions of *that* Act, has any remedy for the injuries of which he complains; but the legislature subsequently passed a supplement thereto, approved the 29th of June, 1839, by which further powers and privileges were granted to said company, and permission given to them to erect their dams 'to a height not exceeding *eight feet*, from pool to pool,' in consideration *of an express reservation*, in the 13th section of said supplement, by the legislature, of a power 'to alter, amend, or annul the charter of said company, at any time thereafter, in such manner, however, that no injustice shall be done to the corporators.'

"In execution of the power thus expressly reserved, the legislature, by an Act approved the 25th of April, 1844, declared, that the company 'shall make amends for any damage done, or that may be done, to lands and property lying on the Monongahela river or its branches and tributary streams, *by overflowing the same*,'" the said damages to be ascertained in the same manner as prescribed by the Act of 31st of March, 1836.

"Under the provisions of this declaratory Act, the plaintiff has an ample remedy for any damages done to his land *by overflowing the same*. This has been decided by the Supreme Court, in the

case of the Monongahela Navigation Company *v*. Coon, 6 *Barr* 379, which went up from this Court. It was there held, that the declaratory Act of 1844 was not unconstitutional; and that a company under a charter to make a lock navigation in a public stream, has not the same privilege as a riparian owner, but must pay for all damage done to the property of others, when required so to do by the terms of its charter; and injuries resulting from the swelling of the river during floods, which is increased by the erection of their dams, are within the law giving compensation for all injuries occasioned by overflowing the land lying on the stream or its tributaries.

"The plaintiff then, under the provisions of the Act of 1844, is entitled to recover damages for injuries done to his lands by *overflowing*; but he is not, under the provisions of said Act, entitled to recover damages for the loss of land caused *by wearing away or abrasion of the river banks*, unless that was occasioned by *overflowing the same*. If the overflowing of the land forming the river bank occasioned its loss, by washing it away and causing it to fall down, the plaintiff may recover therefor under the Act of 1844; but if the river bank was gradually undermined, and wasted away by the water in its ordinary stage as raised by the dams; or if the abrasion of the river bank was occasioned by the swell created by the passage of boats or other craft employed in the navigation of the said river, the plaintiff cannot recover therefor *under the Act of* 1844. If he can recover for such injury at all, his remedy is under the provisions of the Act *of 9th of February*, 1848: *P. L.* 39."

The Judge added, that he did not consider that the plaintiff, in his petition, had limited his claim to the right to damages allowed by the Act of 1848. That though the viewers were appointed under the provisions of the Act of 1848, still the plaintiff was entitled to the right afforded by the Act of 1848, which, as charged, gave a remedy for damage done by overflow.

He refused to answer the *first* point as requested. The second, third, fourth, and fifth points, referring to the construction of the Act of 1848, were reserved; and the jury were instructed to distinguish in their verdict, in case they find the plaintiff entitled to recover, the damages assessed for overflowing plaintiff's land, from those assessed for the loss of land by wearing away or abrasion of the river bank.

The jury rendered a verdict in favor of the plaintiff for the sum of $676.

Upon the points reserved, the opinion was as follows:—

"In this case the jury have found a verdict in favor of the plaintiff for $676, damages done to his land *by overflowing* the same. They have found nothing for the loss of land covered by the wearing away or abrasion of the river bank. The reserved

[Monongahela Navigation Company *v.* Blair.]

questions are therefore immaterial; but if it be necessary to decide the same, they are ruled and determined *pro forma* in favor of the defendants."

It was assigned for error, 1. That the Court erred in taking cognisance of the cause, and refusing to dismiss the same on the ground of want of jurisdiction.

2. That the Court erred in their answers to the several propositions submitted by the counsel for the defendant.

In the case of Blair, the day before the trial, the counsel of the Company entered a withdrawal and discontinuance of the appeal in the District Court, and also in the Common Pleas. Their counsel also objected to the trial on account of such withdrawal and discontinuance.

In this case various points were submitted on the part of the Company. The first, second, third, fourth, and fifth were the same as submitted in the case of Magogany; the eighth and ninth were as follows:—

8. That it is not only the right of the jury, but it would be perfectly just and equitable to consider the Company as *pro tanto* purchasers of the freehold of so much of the land as is rendered of no use to the owners by the improvement, or at least of a privilege, which, in judgment of law, may be coextensive with and permanent as the land itself; and that in so doing, it is proper in the present case that they should designate the quantity of acres and the position as near as may be, to which such permanent injury may attach; and direct in their verdict that plaintiff shall file a relinquishment of the same to the said Company, before he takes the damages assessed thereon out of the Court.

9. That under any circumstances they should designate the quantity permanently injured, and for which they allow damages, and the portion but partially injured, and the amount of damages allowed thereon; and that they should return a verdict specially to that effect, in order to save further difficulties between the parties.

WILLIAMS, J., charged, *inter alia*, "The plaintiff then, under the provisions of the Act of 1844, is entitled to recover damages for injuries done to his land *by overflowing the same;* and he claims damages for no other injury; on the contrary, he has expressly waived all claim to damages in this case *except for injuries done to his lands by overflowing the same.*

"The Act of 1848, in our opinion, changes the mode of appointing the viewers in all cases to assess the damages which a party may have sustained. Since its passage it is not proper for a party in any case to proceed to have viewers to assess damages appointed by a justice of the peace, as provided for in the 8th section of the Act of incorporation, passed the 31st March, 1836. Nor can we

discover that the plaintiff has expressly limited his claim in the petition filed by him, to the title which he may have derived under the act of 1848; and that he is thereby precluded from the assertion of any right in the present case under the Act of 1844."

To the first point the Court refused to answer as requested.

As the plaintiff was not seeking to recover under the Act of 1848, the 2d, 3d, and 4th points were affirmed. The 8th and 9th points were negatived.

Verdict was rendered for the plaintiff for $4000.

It was assigned for error: 1. That the Court erred in disregarding the discontinuance of the appeal, and in proceeding to try the cause notwithstanding such discontinuance.

2. That the Court erred in taking cognisance of the said cause, and refusing to dismiss the same on the ground of want of jurisdiction.

3. That the Court erred in their answers to the first, eighth, and ninth propositions submitted by the counsel for the defendants.

*T. Williams*, for plaintiffs in error.—In the case of Magogany he contended that the District Court had not jurisdiction in the cases.

The *first point submitted on the part of the defendants* is to the effect that there is nothing in the Act of 1844 to authorize a recovery on the footing of occasional inundations arising from high floods, and that, if there were, the plaintiff has expressly limited his claim to any title which he may have derived under the Act of 1848.

Also: the Act of 1844 provides that the company shall make amends for damages done or that may be done to lands or other property by overflowing the same.

The constitutionality of this Act is denied upon the ground that the power to alter or amend the charter is subject to the qualification "that no injustice shall be done to the corporators." The case admits that the Act of 1844 did deprive the company of a right which they had previously enjoyed. It did then necessarily inflict injustice on the corporators.

It is apprehended, also, that this Act applies only to cases of *permanent* occupation by submersion. As the law stood before, the company was not liable in such a case. To extend their responsibility, however, to the case of an occasional flood, would be to render them liable for an act of Providence. It would be more than has ever been claimed at the hands of a riparian owner, who has the undoubted right to swell the water back permanently to his own line, and is not liable for the consequences of a flood,' upon the very principle on which we claim immunity under the like circumstances: 4 *Rawle* 10, Lehigh Bridge Company *v.* Lehigh Navigation Company.

[Monongahela Navigation Company *v.* Blair.]

If, however, the Act was not intended to provide for the case of a permanent overflow, the Legislature would have employed other language. They would not have spoken of damages actually done, or that might be done to lands, but of the exposure or liability to damage, as a subject of compensation. If the Company is liable at all *for anything short of a permanent overflow,* it is of course only liable to the extent of the damage actually done by repeated inundations, and would be exposed to a new action upon every recurring flood.

But again: If the case provided for was not intended to be one of permanent overflow, when could the landowner have first complained? Not certainly before the occurrence of a flood, because there was no damage until that time. If not, however, until that contingency, how were his damages to be measured? By the extent of that flood? Or was he to wait for another and another? And, after waiting and recovering upon the effects of a dozen freshets, suppose another, still higher, to follow, would he be concluded by what had gone before, or would it be the ground of a new action? If he is barred by one recovery, then he recovers only for the damage previously done, and not for that "which may be done" thereafter.

The 8th and 9th points suggest that if the defendants are to be held responsible they ought to be regarded as purchasers *pro tanto,* and the quantity occupied ought therefore to be set out, and a relinquishment thereof filed.

If the occupation is a permanent one, this precaution might perhaps be dispensed with on the ground of a continuing and uninterrupted possession. If it be occasional it ought to be defined, unless a recovery upon damage done to one acre is to be taken as a defence to a damage done to forty, in which case, as already remarked, a very important clause in the Act would be nullified.

If damages are recoverable, the Act of 1844 prescribes that they shall be assessed in the manner prescribed by the Act of 1836. The plaintiff, however, has proceeded in the manner directed by the Act of 1848, viz., by an application to the Court instead of to a justice of the peace.

In the case of *Blair,* he contended also that the District Court had not jurisdiction—that it was exclusively *in the Common Pleas.*

2d. That the power to discontinue or withdraw the appeal existed, reference was made to 1 *Ser. & R.* 77, King *v.* Sloan; 11 *Ser. & R.* 146; 17 *Ser. & R.* 364; 5 *W. & Ser.* 370, McKennan *v.* Henderson. The Act of 28th March, 1820, forbidding the withdrawal of appeals without the consent of the adverse party, applies only to appeals from awards of arbitrators.

*Loomis,* for the complainants, defendants in error.—He contended that the application to the Court of Common Pleas, under

the 3d section of the Act of February, 1848, was proper, as jus-·
tices of the peace ceased, by the terms of that Act, to have any
power to appoint viewers in such a case.

It was further contended that the District Court had jurisdiction
to try all civil pleas and 'actions, provided the amount exceed
$100.

Also, that the withdrawal of the appeal was not legal.    Appeals,
by the Act of 1836 for the incorporation of this Company, were
allowed in the same manner that appeals were allowed in cases
under the Arbitration Act of 1810, and appeals from the report
of viewers are within the spirit of the provision of the Act of
1820 : 7 *Smith's Laws Pa.* 323.

The 33d section of the Act of 16th June, 1836, prohibits the
withdrawal of an appeal from an award of arbitrators without the
written consent of the adverse party ; but the 25th section pro-
vides that after appeal, the Court may allow the plaintiff to take
a nonsuit, and under this 'latter provision the case of McKennan
*v.* Henderson, 5 *W. & Ser.* 370 was decided.

The constitutionality of the Act of 1844 was decided in the case
of The Monongahela Navigation Company *v.* Coon, 6 *Barr* 381–4,
and that the remedy given by it was not limited to cases of *perma-
nent* overflow.    The claim of the plaintiff was *not* limited by him
to the right derived under the Act of 1848.    The petition claimed
damages done by *the overflow on the lands.*   Claim for such damage
was allowed by the Act of 1844, and *consequential damages* were
allowed by the Act of 1848 ; but the latter were waived on the
trial, and the claim restricted to that for damages resulting from
overflowing, as allowed by the Act of 1844.

In the case of Blair, the opinion of the Court was delivered,
December 20, 1852, by

BLACK, C. J.—By the act incorporating the Navigation Com-
pany, and its supplements, the damages done to private property
by its works are to be assessed by viewers, who are to be appointed,
if the parties cannot agree, by the *Court of Common Pleas.*   The
report of the viewers is to be filed in the office of *the prothonotary
of the proper county,* and when confirmed by *the Court,* judgment
may be entered and execution issued thereon, either party having
the right to appeal to *the Court.*   Before entering on the lands,
the Company shall give security, to be approved by the *Court of
Common Pleas,* to pay the damages finally adjudged against them.

The question raised here is, whether these provisions give juris-
diction to the District Court of Allegheny county to try the cause
on appeal.    We answer no, without doubt or hesitation.    The pro-
thonotary of the proper county means the officer of the Common
Pleas, the Court referred to is that Court, and there is no reason
to think that the District Court was in the thoughts of the legisla-

[Monongahela Navigation Company *v.* Blair.]

ture at all.  "*The Court*" is singular, and therefore it cannot mean both.    It is definite, and therefore it does not signify either of two.    The appeal must, therefore, be to one in exclusion of the other.    When a new and extraordinary remedy, out of the usual course of the common law, is given by statute, the party, if he adopts it at all, must pursue it according to the letter.    No Court has more authority in such a matter than what it derives from the legislature.    The jurisdiction cannot be taken by one tribunal because it has been given to another.    If the District Court be the one designated by the act of incorporation, then there is no appeal from the report of viewers in any county but Allegheny, unless we suppose that the District Court of that county might hear appeals from Westmoreland, Fayette, and Washington.

It is contended that, though the power was not conferred by the act of incorporation, the District Court derived it from the law by which it (the Court) was established.    The act of 1833 gives to the District Court power "to try, hear, and determine all civil pleas and actions, real, personal, and mixed, and for the trial of all such pleas and actions shall have the same powers, authorities, and jurisdictions as are *now* vested by law in the Court of Common Pleas."    It cannot be held that "civil pleas and actions" mean more than the ordinary causes which are brought of common right and in due course of law.    The phrase does not properly include an unusual jurisdiction conferred by a special act of Assembly.    Certainly there is nothing in the Act of 1833 to prevent the legislature, in 1836, from giving the jurisdiction, in a case like this, to what Court they pleased.    That they did give it to the Common Pleas and not to the District Court, has been shown.    There is nothing in the act of 1839 (by which the District Court was continued) that we look upon as material to the point before us.

We are of opinion that the appeal cannot be withdrawn, except by consent.

We see no error in the record except the one of taking jurisdiction.    The other points in the cause have been so firmly settled by legislative enactment and judicial decision, that they cannot now be moved.

This judgment must be reversed, and the record remitted to the District Court.    It will be the duty of that Court to send the cause into the Common Pleas to be proceeded in according to law.

Judgment reversed, and record remitted, with directions to the District Court to send the cause into the Common Pleas.

Monongahela Navigation Company *v.* Magogany:

In this case the judgment was also reversed.